# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT FLORIDA
### CASE NO.: 9:25-cv-80096-AMC

MATTHEW BERMAN, individually
and on behalf of all others similarly
situated,

      Plaintiff,

vs.

LAZER QUICK LOAN NOW, LLC
a Texas limited liability company,

      Defendant.

_____/

### DEFENDANT LAZER QUICK LOAN NOW, LLC'S
### MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY,
### TO DISMISS, AND INCORPORATED MEMORANDUM OF LAW

LAZER QUICK LOAN NOW, LLC (LAZER), by the undersigned counsel and pursuant to Federal Rules of Civil Procedure 9(c), 12(b)(1), Rule 12(b)(2), and 12(b)(6), and Local Rules 5.4(f)(2) and 7.1 of the USDC of the Southern District of Florida, files this motion to compel arbitration or, alternatively to dismiss plaintiff's four claims, two brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, (TCPA), and two brought under the Florida Telephone Solicitation Act, § 501.509, Fla. Stat., (FTSA).

Plaintiff gave express consent online to receive marketing and text messages by any means or technologies. At the same time, plaintiff agreed that all disputes or claims would be settled by final and binding arbitration, if a mandatory pre-arbitration mediation is unsuccessful. The arbitration agreement is valid and enforceable and delegates all matters to the arbitrator to decide, including the issue of arbitrability and whether conditions precedent to arbitration have been satisfied. That delegation of all matters to the arbitrator, including gateway issues, leaves this Court

with only one task – to enter an Order that directs the parties to proceed to arbitration and stays this proceeding until such arbitration is held in accordance with the terms of the agreement.

**<u>MEMORANDUM OF LAW</u>**

## I.   INTRODUCTION

This story does not begin with an unwanted text message, received in violation of the TCPA and the FTSA; rather, it begins with plaintiff's need for, desire for, or curiosity about the possibility of obtaining an online loan. One day, before he received the allegedly offending text, plaintiff sat down either in front of his computer or another form of electronic communication technology, switched it on, went to a browser of his choice, framed a query, and started searching for an online loan. Among others, he found the home page of a loan referral service – lendyou.com (LendYou). The LendYou website (Site) explains that LendYou connects consumers with prospective lenders participating in the LendYou.com referral network.

On the Site home page, the browsing plaintiff clicked the green background, white lettering "Get Started" button, which redirected him to a "Submit Your Request" page. Plaintiff completed the LendYou "Request Form," where he provided highly personal, private identifiable information. With the form completed, plaintiff faced a decision about his next click. At the bottom of the Request Form plaintiff stared at a purple background, white lettering "SUBMIT AND AGREE" button containing purple hyperlinks. Directly above the button appeared this notice and disclosure:

By clicking "SUBMIT AND AGREE" I acknowledge that I have read and agree to the terms of the Privacy Policy and Terms of Use, which contain a mandatory arbitration clause.

I also consent to receive marketing and other texts or calls from Lendyou and/or its marketing partners at the number previously provided, by any means or technology, including an automatic dialing system, to the phone number I have provided, even if that number is on a national or state Do-Not-Call registry. Carrier and data rates may apply. I understand that my consent to such calls and text messages is not required to purchase products from or use the services of lendyou and/or its marketing partners.

**SUBMIT AND AGREE**

At that point, plaintiff faced a decision: read the information in the box and click the SUBMIT AND AGREE "Button" thereby consenting to receiving "marketing and other texts or calls from LendYou and/or its *marketing partners*," which would get him the access to the information he desired, or he could leave the page without clicking the box and not receive the information or loan he sought. He intentionally clicked the **SUBMIT AND AGREE** button.

One of LendYou's marketing/lender partners is LAZER, referred to by its name Lazer Quick Loan Now, LLC on the Site. Once plaintiff clicked SUBMIT AND AGREE, LendYou provided his personal information to LAZER per the Terms of Use. LAZER, based on the referral from LendYou, texted plaintiff, who is now suing claiming he did not give consent to receiving texts from a lender and that the texts he received somehow violated the TCPA and FTSA. Plaintiff either has forgotten or has consciously ignored that he provided consent to receiving marketing at least three (3) times.

## II.   BACKGROUND

### A.   THE ACTORS

#### 1).   The Plaintiff

Plaintiff alleges he is "a natural person" and "resident of Palm Beach County, Florida." DE 1 at ¶ 7. He brings these claims for himself and a putative class alleging he received text messages from LAZER. *See* DE 1 at ¶¶ 53-64. He states he received the first text on April 27, 2024, and replied that same day with the word STOP. *See* DE 1 at ¶¶ 10-14. Plaintiff states he registered his '5390' number with the do-not-call registry on June 25, 2024 [DE 1 ¶ 34], seven weeks *after* he received the first text. He alleges he received "at least" eleven more texts between December 24, 2024 and January 3, 2025, and opted out of each. *See* DE 1 at ¶ 14. These twelve texts are the

subject of the complaint, although the screenshots inserted into the complaint do not correspond to the allegedly violative text messages.

### 2).   The Loan Referral Service

Plaintiff uses the word "loan" just four times in his complaint DE 1 ¶¶ 1, 3, 20, and 21. He never explains how he thinks LAZER obtained his information, nor does he mention LendYou.com, the Request Form, or the Terms of Use, where he freely gave his personal information – understanding that the information would be shared with and used by a lender like LAZER. *See* LendYou.com Loan Request Form and Terms of Use (the TOU) attached and incorporated by reference as Exhibit A.

LendYou.com is an advertising referral service for qualified participating lender or marketing partners such as LAZER, who may make funds available to consumers for cash advance loans, installment loans, or personal loans. LendYou is not a lender and does not make credit decisions. As a loan connecting service, LendYou acts as an intermediary, connecting consumers who are looking for financial assistance with independent, third-party lenders like LAZER who may be able to provide a loan. The TOU at the LendYou Site state clearly that LendYou is a Loan Referral Service, explaining that:

> Our loan referral service (the "Service") connects consumers with prospective lenders participating in our network (the "Lender Partners"). To use the Service, you must complete an online request form (a "Request Form") that requests personal information from you, including your name, address, telephone number, email address, social security number, bank account information, and employment information. Please review our privacy policy at Privacy Policy ("Privacy Policy"). The terms of the Privacy Policy are incorporated into and considered a part of these Terms of Use.

Registering with LendYou.com is free to a consumer, like plaintiff. LendYou is paid by independent third-party lenders for potential customer referrals.

### 3).   The Defendant: LAZER

LAZER QUICK LOAN NOW, LLC is a Texas limited liability company. LAZER's status in Texas is Active/Compliance. LAZER is a LendYou Lender or Marketing Partner, identified by name in the TOU found on LendYou.com's Site. LendYou is not a party to this action.

### B.  PLAINTIFF GAVE EXPRESS CONSENT TO RECEIVE TEXTS

Plaintiff would have the Court believe that these texts struck him completely out-of-the blue, that he never consented to receiving text messages from LAZER about "Tak[ing] a Step Towards Financial Stability," DE 1 at ¶¶ 10 & 14. Yet, undeniably, as the online Request Form shows, he would have had to agree to receive texts and other forms of communication from potential lenders, including LAZER identified on the LendYou Site, when he completed and submitted the LendYou Request Form online at lendyou.com, as he did.

In the registration process plaintiff freely supplied his name, address, birthdate, ***telephone number* ['5390']**, employer's name, monthly net income, **social security number**, pay frequency, bank name, bank state, type of accounts, **account numbers**, and ABA/Routing and other personally identifiable information. After he completed the Request Form, you can imagine him sitting at his desk, computer or other communications technology turned on, ready to connect, when he saw, staring back at him from the LendYou Site two clear and conspicuous statements:

By clicking "SUBMIT AND AGREE" I acknowledge that I have read and agree to the terms of the Privacy Policy and Terms of Use, which contain a mandatory arbitration clause.

I also consent to receive marketing and other texts or calls from Lendyou and/or its marketing partners at the number previously provided, by any means or technology, including an automatic dialing system, to the phone number I have provided, even if that number is on a national or state Do-Not-Call registry. Carrier and data rates may apply. I understand that my consent to such calls and text messages is not required to purchase products from or use the services of lendyou and/or its marketing partners.

## SUBMIT AND AGREE

Each statement printed in black on a white background contained purple hyperlinks to the Privacy

Policy, Terms of Use, and list of marketing partners, which informed him that the Privacy Policy and TOU "contain a mandatory arbitration clause."[1]

Plaintiff knew – because that is what the clear and conspicuous language said – that once he clicked SUBMIT AND AGREE that **"[he would] also consent to receiv[ing] marketing and other texts or calls from LendYou and/or its *marketing partners*** at the number previously provided, **by any means or technology, including an automatic dialing system**, to the phone number [he] provided, even if that number is on a national or state Do-Not-Call registry." *See* Exhibit A, LendYou Request Form (emphasis added).

Plaintiff must have contemplated the disclaimer box information and must have understood he would be contacted *via* text message by a lender identified on the Site – not by LendYou. He could not have missed the bare fact that, as a direct consequence of *his* request to obtain an online loan he would receive calls or texts messages on the subject. He knew that to move to that next step, where he would connect with a lender, he had to click the "SUBMIT AND AGREE" Button. Plaintiff clicked the Button. In doing so he accepted all the terms in the Privacy Policy and TOU and thereby consented to being contacted by SMS text message.

There is ample and binding authority for the proposition that a person, like plaintiff here, who knowingly releases his phone number has, in effect, invited and given permission to be called at the number, which sinks plaintiff's claims he did not consent to receive these messages, DE 1 at ¶ 30. *See, e.g., Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110, 1118 & 1123 (11th Cir. 2014) ("persons who knowingly release their phone numbers have in effect given their

---

[1] The Privacy Policy by its terms is subject to and made a part of the TOU and vice versa. The TOU states in this clear and conspicuous disclosure: "By accessing, browsing, or otherwise using the Site, Mobile Apps, or any other aspect of the Service, you acknowledge that you have read, understood, and agree to be bound by the TOU. If you do not accept the terms and conditions of the TOU, you will not access, browse, or otherwise use the Service." *See* Exhibit A, Terms of Use incorporated fully herein.

invitation or permission to be called at the number which they have given, absent instructions to the contrary."); *In re Runyan*, 530 B.R. 801, 804 (Bankr. M.D. Fla. 2015) (Loan Servicer is not liable under the TCPA for contacting the Debtors on their cell phone using an auto dialer because the Debtors consented to calls on their cell phone by listing that number on their mortgage application.)

Likewise, the consent of the called party can be obtained through a third-party intermediary such as LendYou. For example, and under a 2014 FCC Declaratory Ruling, *Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("GroupMe"), 29 F.C.C. Rcd. 3442, 3444 (2014) the rule on this issue is clear and unequivocal: "[A] consumer's prior express consent may be obtained through and conveyed by an intermediary." Both legal principles apply here.

## III.   PLAINTIFF, ONLINE, AGREED TO MEDIATE FIRST ANY DISPUTE AND THEN TO ARBITRATE IF MEDIATION IS UNSUCCESSFUL

One click away from the LendYou home page is the Request Form and SUBMIT AND AGREE box, which is a clear and conspicuous disclosure that the Privacy Policy and the TOU "contain a mandatory arbitration clause." That disclosure is made even before a consumer like plaintiff clicks the Button, meaning plaintiff, even before he consented to being contacted, had read and agreed to the arbitration clause contained in the TOU. Plaintiff also agreed – in the Electronic Disclosure section of the TOU, by submitting a Request Form to LendYou.com – that he would receive notifications, disclosures, and other documents and communications from LendYou.com and/or from its Marketing Partners such as LAZER. That, however, is not the only place arbitration is discussed.

The language in the preamble of the TOU states, prominently and conspicuously, in bold, contrasting blueprint, and all capital letters that the TOU contains a mandatory arbitration clause and that claims can only be brought on an individual basis:

> **PLEASE READ THESE TERMS & CONDITIONS OF USE CAREFULLY, AS THEY CONTAIN AN AGREEMENT TO ARBITRATE AND OTHER IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS, REMEDIES, AND OBLIGATIONS. THE AGREEMENT TO ARBITRATE REQUIRES (WITH LIMITED EXCEPTION) THAT YOU SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, AND FURTHER (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS, AND (3) YOU MAY NOT BE ABLE TO HAVE ANY CLAIMS YOU HAVE AGAINST US RESOLVED BY A JURY OR IN A COURT OF LAW.**

Later in a separate bolded contrasting colors section titled "Dispute Resolution by Binding Arbitration" followed by another conspicuous all caps and underlined sentence, there are eight separate sub-sections (a through h), which constitute the arbitration agreement. Those respective subsections are in these separate titled paragraphs: a. Agreement to Arbitrate; b. Prohibition of Class and Representative Actions and Non-Individualized Relief; c. Pre-Arbitration Dispute Resolution; d. Arbitration Procedures; e. Costs of Arbitration; f. Confidentiality; g. Severability; and h. Future Changes to Arbitration Agreement. The arbitration agreement states, in part:

> **Dispute Resolution by Binding Arbitration**
>
> <u>PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS.</u>
>
> **a. Agreement to Arbitrate**
>
> This Dispute Resolution by Binding Arbitration section is referred to in these Terms as the "Arbitration Agreement." You agree that any and all disputes or claims that have arisen or may arise between you and LendYou.com, whether arising out of or relating to these Terms (including any alleged breach thereof), the Service, any advertising, or any aspect of the relationship or transactions between us, will be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this Arbitration Agreement, except that you may assert individual claims in small claims court, if your claims qualify. Further, this Arbitration Agreement does not preclude you from bringing issues to the attention of federal, state, or local agencies, and such agencies can, if the law allows, seek relief against us on your behalf. You agree that, by entering into these Terms, you and LendYou.com are each waiving the right to a trial by jury or to participate in a class action. Your rights will be determined by a neutral arbitrator, not a judge or jury. The Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

As the TOU makes clear, plaintiff agreed to resolve all disputes or claims exclusively through final and binding arbitration, "whether arising out of or relating to these Terms" or "*any aspect of the relationship or transactions.*" The arbitration agreement also has a class action waiver provision:

b. Prohibition of Class and Representative Actions and Non-Individualized Relief

YOU AND LendYou.com AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING. UNLESS BOTH YOU AND LendYou.com AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING. ALSO, THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S), EXCEPT THAT YOU MAY PURSUE A CLAIM FOR AND THE ARBITRATOR MAY AWARD PUBLIC INJUNCTIVE RELIEF UNDER APPLICABLE LAW TO THE EXTENT REQUIRED FOR THE ENFORCEABILITY OF THIS PROVISION.

The arbitration agreement also calls for mandatory pre-arbitration mediation:

c. Pre-Arbitration Dispute Resolution

We are always interested in resolving disputes amicably and efficiently, and most customer concerns can be resolved quickly and to the customer's satisfaction by emailing customer support at info@LendYou.com. If such efforts prove unsuccessful, You and LendYou.com agree that a party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to LendYou.com should be sent to 1125 E. Broadway #545, Glendale, CA 91205 ("Notice Address"). The Notice must (i) describe the nature and basis of the claim or dispute and (ii) set forth the specific relief sought. If LendYou.com and you do not resolve the claim within sixty (60) calendar days after the Notice is received, you or LendYou.com may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by LendYou.com or you will not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or LendYou.com is entitled.

Plaintiff, by suing in court not only seeks to avoid arbitration but also is skipping over an important condition precedent – mediation – and ignoring the class action and jury trial waivers, to which he agreed.

## IV.   ARGUMENT

There are at least three reasons for this Court to compel plaintiff, without further analysis or consideration of the claims, to arbitrate this matter involving interstate commerce. First, plaintiff had conspicuous and clear notice of and so is bound by the valid, irrevocable, and enforceable Arbitration Agreement, to which he agreed. Second, there is an agreement in writing (a) to arbitrate and (b) to have the arbitrator determine the enforcement, interpretation, validity, scope, or applicability of the contract. Third, plaintiff failed to satisfy the contractual condition precedent of pre-litigation mediation, which is an independent basis on which this Court can dismiss this action.

**A. Plaintiff's agreement to arbitrate any dispute or claim with LendYou is enforceable by LAZER under the Federal Arbitration Act (FAA) and state law.**

**(1)   The TOU, which identifies LAZER as a Marketing Partner, gives ample notice of the terms and conditions of any use of the Site, and the arbitration agreement.**

Contracts on the internet come in different forms. Clickwrap agreements, such as the one here, require a user (plaintiff) – as discussed above – to click affirmatively a box on a website acknowledging agreement to the TOU. Courts find these agreements enforceable because they "require the user to physically manifest assent," putting the user "on inquiry notice of the terms assented to." *Falcon v. TelevisaUnivision Digital, Inc.*, 2024 WL 1492831, at *2 (M.D. Fla. Mar. 29, 2024). Here the TOU gives plaintiff more than reasonable, constructive, or inquiry notice of the Site's terms, unless he claims he never read the TOU, Privacy Policy, or list of Marketing/Lender Partners, which still does not absolve his agreement to arbitrate.

**(a) By submitting his Request Form, plaintiff agreed he could be contacted by email, telephone, SMS, or direct mail**. The TOU section titled "Credit Decisions" states:

> Once you submit a Request Form, LendYou.com shares your information with our Lender Partners. By submitting a Request Form, you understand and agree that you requesting loan offers from the Lender Partners. You are also agreeing that LendYou.com and the Lender Partners may contact you by any means (including email, telephone, SMS, and direct mail) so that they may assist in processing your Request Form or provide information to you about additional offers now or in the future.

Plaintiff also agreed in the TOU's "Electronic Disclosure" and "Accuracy," sections, as to the Lender Partners – such as LAZER, that:

## Electronic Disclosure

> By Submitting your Request Form you agree to receive notifications, disclosures, and other documents and communications both from LendYou.com and from our Lender Partners. If you are connected to a Lender Partner, that lender may require you to execute an electronic loan contract. This electronic loan contract will be as binding as a loan contract in paper form. And your electronic signature will be as valid as a physical signature on a paper loan contract.
>
> The lender may also require you to consent to receiving all notifications regarding your loan electronically. These electronic communications may include attempts to collect a debt.
>
> The lender may allow you to withdraw your consent to electronic disclosures. Please contact the lender with whom you were connected to learn more about this process. Please note, however, that not consenting to receive electronic disclosures may affect your ability to receive a loan from a Lender Partner.

> **Accuracy**
>
> You represent that the information you provide to LendYou.com, and ultimately, the Lender Partners, through your Request Form is accurate and truthful. If the information in your Request Form is not accurate and truthful, LendYou.com may deny, suspend, or terminate your use of the Service.

**SMS Terms & Conditions**

By providing a mobile phone number you are opting in to communications via SMS from LendYou.com and the Lender Partners. These communications may include a follow-up SMS message containing a link to your completed loan Request Form, payment reminders from Lender Partners, and future offers.

The TOU requires an interaction between the Site and plaintiff as **he** navigated through it. He had to make affirmative statements that he understood and agreed to the TOU and Privacy Policy before he could proceed with using it, which is no less true about the arbitration agreement. The conspicuousness and placement of hyperlinks to terms, the various notices of the terms, the disclaimer and notice about arbitration, and the consent to receive SMS texts immediately above the SUBMIT AND AGREE Button, and the Site's general design (bold, conspicuous type, all caps, contrasting colors), all contribute to the conclusion that plaintiff was aware of and consented to the arbitration agreement or at least was on inquiry notice.

Plaintiff accepted the Arbitration Agreement contained in the TOU when he clicked the "SUBMIT AND AGREE" Button. Now the agreement must be enforced according to its terms. The FAA, 9 U.S.C. § 1 et seq., provides that:

> **A written provision** in ... a contract evidencing a transaction involving commerce **to settle by arbitration,** a controversy thereafter arising out of such contract or transaction **... shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; (emphasis added). The Arbitration Agreement states in pertinent part:

> This Dispute Resolution by Binding Arbitration section is referred to in these Terms as the "Arbitration Agreement." You agree that any and all disputes or claims that have arisen or may arise between you and LendYou.com, whether arising out of or relating to these Terms (including any alleged breach thereof), the Service, any advertising, or any aspect of the relationship or transactions between us, will be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this Arbitration Agreement.

The Arbitration Agreement is valid, irrevocable, and enforceable notwithstanding plaintiff's failure to acknowledge (i) the existence of LendYou.com, (ii) the relationship between LendYou and LAZER, (iii) his use of LendYou.com, and (iv) his acknowledgement and agreement

to the TOU, Privacy Policy, and (v) the identification of "Lazer Quick Loan Now" as a Marketing/Lender Partner. Plaintiff agreed to resolve all disputes or claims exclusively through final and binding arbitration, whether arising out of or relating to the TOU or *any aspect of the relationship* or transactions.  He is not free to derive the benefit of access to the Lender Partners, while denying the applicability of the arbitration agreement.

**(b) Nowhere does plaintiff deny the Site's Terms of Use or the arbitration agreement set forth therein**. Indeed, each of plaintiff's four claims rests on the relationship and transaction with LAZER, created when he sat down at his computer or other device, searched the internet, and submitted a Request to LendYou. Plaintiff ignores the conspicuous type and the words of the agreement in the complaint, but his willful blindness to what he agreed to is insufficient to defeat the fact that he is bound by the agreement to arbitrate. *See Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1203–04 (11th Cir. 2024) (Florida law is clear that "one is bound by his contract.") citing *Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347 (Fla. 1977). As the Florida Supreme Court explained this basic contract principle:

> Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.

*Allied Van Lines,* at 347–48. This rule that contracts are binding holds true regardless whether a party simply chooses not to read the agreement or is even physically incapable of reading the agreement. *Rocky Creek Ret. Props., Inc. v. Est. of Fox ex rel. Bank of Am., N.A.*, 19 So. 3d 1105, 1108 (Fla. 2d DCA 2009).

Arbitration is a matter of contract. Plaintiff here freely chose to enter the TOU and Privacy Policy with the attendant clear and conspicuous arbitration provision. He does not allege someone coerced him into signing anything or that someone prevented him from knowing the contents of

the TOU, or that he did not read the TOU or the arbitration requirement – instead, he ignores it as an inconvenient truth. *See Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc.*, 891 So. 2d 558, 558 (Fla. 3d DCA 2004) (per curiam) (holding that blind decedent was bound by signed contract in the absence of evidence that she was coerced into signing it or affirmatively prevented from knowing its contents); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 312–13 (Fla. 5th DCA 1985) (holding that plaintiff was bound by signed contract despite her inability to read English). The FAA "reflect[s] both a liberal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation and quotations omitted). As the foregoing discussion shows, at every step plaintiff understood that he would have to, by the terms of his agreement, arbitrate any dispute with LAZER. "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms, against plaintiff here." *Id*. Plaintiff's agreement requires him to arbitrate his dispute.

      **(c) Courts recognize that a non-signatory may compel arbitration under various circumstances.** The terms of the arbitration agreement here are broad. The viability of plaintiff's claims against LAZER, the non-signatory, are exclusively based on the actions of the signatory, the plaintiff. He cannot now feign ignorance about LAZER, which is referenced in the LendYou TOU by name and referenced by its status as a marketing/lender partner of LendYou. *See* Exhibit A, generally. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation and citation omitted) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through ... third party beneficiary theories ... and estoppel."); *accord Tyman v. Ford Motor Co*., 521 F. Supp. 3d 1222, 1227–28 (S.D. Fla. 2021). As the *Tyman* Court held: "courts recognize that, under a variety of circumstances, non-signatories

may compel arbitration[.]") (citing *Arthur Andersen,* 556 U.S. at 631. Some of the circumstances under which a non-signatory may compel arbitration arise when the non-signatory is referenced in, or is a third-party beneficiary to, the agreement to arbitrate, as here. *Wright v. Greensky, Inc.,* 2021 WL 2414170, at *10 (S.D. Fla. June 14, 2021). These circumstances are especially compelling when the "viability of [the plaintiff's] claims against [the non-signatory] are exclusively based on the actions of" the signatory). *Funding Grp., LLC v. Nat'l Fid. Mortg.,* 2013 WL 2404151, at *7 (D.N.J. May 31, 2013).

Courts also have compelled a signatory to arbitrate with a non-signatory at the non-signatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs. *See Tyman,* 521 F. Supp. at 1228 citing *Johnston v. Arrow Fin. Servs., LLC,* 2006 WL 2710663, at *4 (N.D. Ill. Sept. 15, 2006) (granting defendant's motion to compel arbitration where the plaintiff's claim was "based on the conduct of ... a signatory"); *see also Precision Funding Grp.,* 2013 WL 2404151, at * 7. Florida courts have broadly construed arbitration provisions containing the language, *arising out of or relating to*, to encompass claims of non-signatories. *Greensky, Inc.,* 2021 WL 2414170, at *11

As the foregoing binding and persuasive authority shows, plaintiff's claims fall within the scope of the arbitration provision, which LAZER – as a non-signatory, can enforce. If this Court harbors any doubts about sending the parties to arbitration under the FAA, then "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983).

      **(2)**    **The parties agreed in writing (a) to arbitrate and (b) to have the arbitrator decide issues relating to the scope, enforceability, and arbitrability.** As discussed above, there is a signed, valid, and enforceable arbitration agreement in the TOU. Under the holding in *Rent-*

*A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 68 (2010), LAZER is entitled to and does move "for an order directing that such arbitration proceed in the manner provided for in such agreement" under § 4 of the FAA,[2] and for a stay until such arbitration has been had in accordance with the terms of the agreement, under section 3. *See* 9 U.S.C. §§ 3-4.

The arbitration provision states, in part, that:

> **all disputes or claims** that have arisen or may arise between you and LendYou.com, **whether arising out of or relating to these Terms** (including any alleged breach thereof), the Service, any advertising, or any aspect of the relationship or transactions between us, **will be resolved exclusively through final and binding arbitration, rather than a court,** in accordance with the terms of this Arbitration Agreement…. You agree that, by entering into these Terms, you and LendYou.com are each waiving the right to a trial by jury or to participate in a class action. ***Your rights will be determined by a neutral arbitrator, not a judge or jury.*** The Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

> any arbitration between you and US will be conducted by a neutral arbitrator in accordance with the American Arbitration Association's ("AAA") rules and procedures, including the AAA's Consumer Arbitration Rules (collectively, the "AAA Rules"), as modified by this Arbitration Agreement. For information on the AAA, please visit its website, http://www.adr.org. Information about the AAA Rules and fees for consumer disputes can be found at the AAA's consumer arbitration page, https://www.adr.org/consumer.... ***All issues are for the arbitrator to decide, including issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement.***

The U.S. Supreme Court recognized that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' [or delegated] questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 68 (2019) (cleaned up).[3] After all, gateway or delegated questions are "simply an additional, antecedent agreement"

---

[2] The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213 (1985) (emphasis added); *Davis v. RealPage, Inc.*, 2024 WL 278293, at *2 (S.D. Fla. Jan. 10, 2024) (same) (cleaned up).

[3] Where arbitrability is left to the Court, which is not the case here, the Court considers these three factors: (1) whether a valid written agreement to arbitrate exists; (2), whether an arbitrable issue exists, and (3) whether the

about *who* – the arbitrator or the Court – should decide these questions. *Rent-A-Center*, 561 U.S. at 69. And, when parties have agreed to arbitrate and to arbitrate "arbitrability," as is the case here, a court may not disregard their agreement—even if a particular argument for arbitration seems to be "wholly groundless**.**" *Henry Schein*, 139 S. Ct. at 528–31 (emphasis added). Plaintiff agreed to arbitrate and to have the arbitrator resolve all issues. Plaintiff bears the burden of establishing that the agreement in question should not be enforced, *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000), but before the arbitrator.

**B.   Plaintiff's claims must be dismissed for failing to satisfy a condition precedent.**

When a plaintiff fails to meet the requirements of Rule 9(c), the claim is subject to dismissal. *Villamar v. Lexington Ins. Co*., 2023 WL 11799597, at *3 (S.D. Fla. Sept. 28, 2023). Plaintiff failed to satisfy a condition precedent before filing this Action. Because LAZER raises this issue as a basis for dismissal, plaintiff bears the burden of proving conditions precedent have been satisfied. *Amazing Glove SDN.BHD v. SN DME, LLC,* No. 21-62070-CIV, 2022 WL 658014, at *3 (S.D. Fla. Mar. 4, 2022) (Although Rule 9(c) does allow plaintiffs to generally allege "that all conditions precedent have occurred or been performed[,]" Fed. R. Civ. P. 9(c), it also requires plaintiffs to "bear[ ] the burden of proving that the conditions precedent ... have been satisfied" when defendants specifically join those conditions precedent in issue). Plaintiff's complaint, which is infirm because this matter – as set forth in the TOU should be first in mediation and then arbitration if mediation fails. Because the arbitrator – not the District Court – determines whether plaintiff satisfied a condition precedent, the case must be dismissed, not stayed. *See* § 682.02(3), Fla. Stat.[4]

---

right to arbitrate was waived." *Davis,* No. 0:23-CV-61683, 2024 WL 278293, at *2. So, even if this Court considers the arbitrability question, LAZER demonstrates herein that each of these factors is in its favor.

[4] In *Patterson v. Melman*, the appeals court reversed the trial court's decision on this issue, emphasizing that whether the party satisfied a condition precedent is explicitly and solely assigned by statute to the arbitrator, 398 So.3d

### C. Alternatively, plaintiff fails to state a claim for relief.

(1) **This Court lacks subject matter jurisdiction** over the federal or supplemental state law claims, as the complaint stands today – because the matter belongs in arbitration.[5] Fed. R. Civ. P. 12(b)(1). As courts here in the Southern District and in the Eleventh Circuit have ruled, mere mention of a federal statute does not create federal question jurisdiction. *Wholesale Direct 2 You v. Switchmate Home, LLC*, 2024 WL 3757274, at *3 (S.D. Fla. June 12, 2024) citing *Hill v. Marston*, 13 F.3d 1548, 1550 (11th Cir. 1994). The Court lacks jurisdiction because there is a binding, mandatory arbitration agreement formed by an intermediary and enforceable by a non-signatory against a signatory.

(2) **This Court lacks personal jurisdiction** over LAZER as the complaint stands today. Fed. R. Civ. P. 12(b)(2). Conspicuously missing from the complaint are any personal jurisdiction allegations of the long-arm's reach or the dimensions of constitutional due process and fair play. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief, which includes jurisdictional allegations. Fed. R. Civ. P. 8(a)(2). Plaintiff here made no effort to allege person jurisdiction, so there is no short and plain statement, and the claims must be dismissed.

(3) **The complaint also fails to state a plausible claim for relief**, as it stands today. Fed. R. Civ. P. 12(b)(6). The bulk of plaintiff's allegations consist of *parroting* the language of the

---

470 (2024). *See also 3-J Hosp., LLC v. Big Time Design, Inc.*, 2009 WL 3586830, at *3 (S.D. Fla. Oct. 27, 2009) (a court may dismiss where a party bound by a condition precedent to mediate fails to satisfy the condition); *see also Brosnan v. Dry Cleaning Station Inc.*, 2008 WL 2388392 (N.D.Cal.2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."); *see also Woods v. Holy Cross Hosp.*, 591 F.2d 1164 (5th Cir. 1979) (dismissing medical malpractice action where mediation was a condition precedent to filing suit).

[5] A motion to compel arbitration is treated as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Accordingly, the Court may consider matters outside the four corners of the complaint. *Calcaterra v. Baptist Health S. Fla., Inc.*, 733 F. Supp. 3d 1349, 1353 (S.D. Fla. 2024) (internal citations omitted).

respective statutes (*e.g.,* DE 1 at ¶¶ 66-72; 74-75; 89-91; 99-100), *speculating* about what LAZER has done to members of the putative class (*e.g.,* DE 1 at ¶¶ 18, 22, 24, 225, 37,38, 42-52, 57, 76-85, & 92), or *drawing* conclusions and legal conclusions based, for example, "upon information and belief" and based on what "Defendant would be able' to do (*e.g.,* DE 1 at ¶¶ 16, 17, 27, 35, 38-41, 87, 101-105). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions," a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Plaintiff cannot rest the complaint on "naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557. The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," but it does not do so. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007 (cleaned up). Plaintiff fails to do either, as discussed above. The allegations do not give rise to a plausible claim. *See* Fed. R. Civ. P. 12(b)(6). As pled, plaintiff's claims lack context and do not give fair notice of the grounds on which the respective claims rest.

(4) **Plaintiff's conclusory allegations do not support the claims asserted.**

Plaintiff asserts LAZER violated the TCPA based singularly on "screen shots" he inserted into the complaint. *See* DE 1 at ¶ 14. There is consequently insufficient factual matter alleged to support a plausible claim – based on these illegible and conclusory images embedded in the complaint. A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible*** on its face." *GBB Drink Lab, Inc. v. FSB Biosciences, Inc*., 2024 WL 4564737, at *2 (S.D. Fla. Oct. 9, 2024) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations ... are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). Plaintiff's unadorned conclusions fail to state a plausible claim under any legal theory.

## V.      CONCLUSION

Based on the foregoing, this Court must enter an Order that directs the parties to proceed to arbitration and stays this proceeding until such arbitration has been had in accordance with the terms of the agreement, or that dismisses the action for failing to state a claim for relief.

By: */s/Jeffrey Gilbert*
**JEFFREY GILBERT**
Florida Bar No. 375411
jeffrey.gilbert@gmlaw.com
melissa.fernandez@gmlaw.com
**GREENSPOON MARDER LLP**
600 Brickell Avenue, 36th Floor
Miami, FL  33131
Direct Phone Number: 305-789-2761
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certified that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/Jeffrey Gilbert*
**JEFFREY GILBERT**
Florida Bar No. 375411